## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**NANCY ANN SIMS**                                                      **PLAINTIFF**

**VS.**                              **4:19-CV-00399-BRW**

**FAULKNER COUNTY, ARKANSAS,** *et. al.*                          **DEFENDANTS**

### ORDER

Pending is Defendants' Motion for Summary Judgment (Doc. No. 40).  Plaintiff has responded, Defendant has replied, and Plaintiff filed a sur-reply.[1]  For the reasons stated below, the motion is GRANTED.

### I.      BACKGROUND

Plaintiff's Complaint stems from a fight between Plaintiff and a fellow inmate in the Faulkner County Detention Center, Conway, Arkansas on June 9, 2016.  According to Plaintiff, she had been asked by inmate Amber Benson to pass a paper note to another inmate.[2]  Plaintiff asked Officer Nikita Brown if she could deliver the note.[3]  Officer Brown told her she could not deliver the note and the note was turned over to Corporal Zawana Holmes (not a defendant in this case).[4]  Later that day, Officer Teresa Coleman instructed Plaintiff to clean cell H-30, which was  occupied by Ms. Benson, Stacy Wright, and Crystal Campbell.[5]  When  Plaintiff entered the cell, Ms. Benson assaulted her.

---

[1]Doc. Nos. 46, 53, 57.

[2]Doc. No. 1.

[3]Doc. No. 49.

[4]*Id.*

[5]Doc. No. 1.

Plaintiff alleges that Defendants knew that Ms. Benson posed a threat to her because she had "snithced" on Ms. Benson concerning the note.[6]  Plaintiff also asserts that even if Defendants did not specifically know about the note, Defendants knew she posed a risk because Ms. Benson was in a strict inmate status for disciplinary problems and failed to protect Plaintiff by allowing her to enter the cell.

Plaintiff further alleges that after Ms. Benson assaulted her, she was not provided adequate medical care for her injuries.[7]  Plaintiff contends that she immediately requested medical attention after the altercation and made several additional requests over the next two days.[8]  Officer Anita Wright called the "on call" nurse who placed Plaintiff on "Med Watch" for four hours.  Plaintiff was released after the four hour time period elapsed.[9]  The next morning, Plaintiff was told to report for work in the jail kitchen, but was unable to work a full shift because of her injuries.[10]  She again requested medical attention, but jail personnel did not respond.[11]  At 7:33 a.m. on June 11, 2016, Plaintiff officially requested a medical appointment.[12]  Subsequently, jail personnel instructed her not to work and took her to the Conway Regional Medical Center where she received medical treatment.[13]  Her injuries included a fractured nose, abdominal gastritis, and a concussion.[14]

---

[6]Doc. No. 49.

[7]Doc. No. 1.

[8]Doc. No. 50-2, pp. 12,

[9]Doc. No. 50–6.

[10]Doc. No. 1.

[11]*Id.*

[12]Doc. No. 50-20.

[13]Doc. No. 1.

[14]Doc. No. 50.

Plaintiff has sued ten Defendants:  Tim Ryals, Monte Munyan, Teresa Coleman, Bobbie Spivey, Anita Wright, Leslie Moore, Kerra Adkins, Edward Travis, and Nakita Brown, all in their individual and official capacities, and Faulkner County, Arkansas.[15]

Plaintiff asserts under 42 U.S.C. 1983 and the Arkansas Civil Rights Act (ACRA), that her constitutional rights were violated when Defendants allegedly failed to protect her from the assault by Ms. Benson and failed to provide adequate medical care after the attack.[16]

Defendants assert they are entitled to qualified immunity and summary judgment as a matter of law.[17]

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[18]  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[19]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[20]  Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[21]  I must view the facts in the light

---

[15]*Id.*.

[16]*Id.*

[17]Doc. No. 40.

[18]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed R. Civ. P. 56.

[19]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[20]*Inland Oil & Transp. Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[21]*Id.* at 728.

most favorable to the party opposing the motion.[22]  The Eighth Circuit has also set out the burden

of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate,
> *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine
> dispute on a material fact.  It is enough for the movant to bring up the fact that the
> record does not contain such an issue and to identify that part of the record which
> bears out his assertion.  Once this is done, his burden is discharged, and, if the record
> in fact bears out the claim that no genuine dispute exists on any material fact, it is
> then the respondent's burden to set forth affirmative evidence, specific facts,
> showing that there is a genuine dispute on that issue.  If the respondent fails to carry
> that burden, summary judgment should be granted.[23]

Only disputes over facts that may affect the outcome of the suit under governing law will

properly preclude the entry of summary judgment.[24]

## III.    DISCUSSION

### A.      Qualified Immunity

Defendants argue that they are entitled to qualified immunity on the claims for  failure to

protect and failure provide adequate medical care.[25]  Under the doctrine of qualified immunity, a

government official performing discretionary functions is shielded from liability for civil

damages if the conduct did not violate clearly established rights or if it would have been

objectively reasonable for the official to believe the conduct did not violate the plaintiff's

rights.[26]  On a motion for summary judgment on qualified immunity grounds, a § 1983 plaintiff

must produce evidence that: (1) defendants violated plaintiff's constitutional rights; and (2) the

---

[22]*Id.* at 727-28.

[23]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[24]*Anderson*, 477 U.S. at 248.

[25]Doc. No. 40.

[26]*Cox v. Suggs*, 484 F.3d 1062, 1065 (8th Cir. 2007).

violation was objectively unreasonable.[27]  Plaintiff carries the burden of proof to show that the defendant is not entitled to qualified immunity.[28]

Here, Plaintiff was incarcerated on an outstanding warrant for failure to pay a fine.[29] Accordingly, she is a pre-trial detainee for constitutional analysis.  The conditions and restrictions of confinement for pre-trial detainees are analyzed under the Due Process Clause of the Fourteenth Amendments, not the Eighth Amendment.[30]  The Eighth Circuit has stated that for pre-trial detainees, courts should "apply the identical deliberate-indifference standard as that applied to conditions-of-confinement claims made by convicts." [31]

### 1.    Failure to Protect Claim

The Eighth Amendment requires jail officials to take "reasonable measures to guarantee the safety of inmates [and] . . . to protect prisoners from violence at the hands of other prisoners."[32]  Plaintiff claims Defendants violated her Fourteenth Amendment due process rights by failing to protect her from Ms. Benson's attack.  For Plaintiff to prevail on her due process claim, she must show: (1) that cleaning Ms. Benson's cell posed a substantial risk of serious harm, and (2) Defendants knew of and disregarded an excessive risk to Plaintiff's safety.*[33]*

Defendants argue that they are not liable for Ms. Benson's attack on Plaintiff because it was a "surprise attack."[34]  The Eighth Circuit has held that jail officials and employees cannot be

---

[27]*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[28] *See v. City of Elyria*, 502 F.3d 484, 491 (6th Cir. 2007).

[29]Doc. No. 42-2, p. 4.

[30]*Johnson v. Leonard*, 929 F.3d 56, 575 (8th Cir. 2019).

[31]*Crow v. Montgomery*, 403 F.3d 598, 601 (8th Cir.2005).

[32]*Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994).

[33]*Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018).

[34]Doc. No. 41.

held liable for failing to protect an inmate from a surprise attack.[35]  Plaintiff contends that even though she admitted she was surprised when Ms. Benson attacked her,[36] this attack does not qualify as a surprise attack because Defendants knew of Ms. Benson's proclivity for violence and knew that she had reason to be angry with Plaintiff.[37]  Defendants deny these assertions.

### a.    Tim Ryals

Sheriff Ryals was elected in November, 2016, and assumed office in January 1, 2017. Plaintiff admits that he had no involvement with Plaintiff during her incarceration at the Faulkner County jail in 2016.  Accordingly, the claims against Sheriff Ryals in his personal capacity are dismissed with prejudice.

### b.    Teresa Coleman, Bobbie Spivey, Leslie Moore, Anita Wright, Kerra Adkins, Edward Travis, and Monte Munyan

In this case, Ms. Benson attacked Plaintiff after she failed to pass a note, and instead alerted (whether intentional or not) officers regarding the note.  Defendants Coleman, Spivey, Moore, Wright, Adkins, Travis, and Munyan assert that they had no knowledge of the note that Plaintiff  had  been asked to carry for Ms. Benson or that Plaintiff had given it to Corporal Holmes.[38] Plaintiff has failed to provide any evidence to the contrary.

Plaintiff also suggests that Defendants knew that Ms. Benson had filed a grievance, earlier on the day of the attack, stating that she was experiencing "violent tendencies."[39] Defendants contend that they were not involved in answering grievances and did not know about

---

[35]See *Schoelch v. Mitchell*, 625 F.3d 1041, 1048 (8th Cir. 2010).

[36]Doc. No. 50-2.

[37]Doc. No. 49, ¶8.

[38]Doc. No. 41.

[39]Doc. No. 50-3, p. 10.

an alleged grievance Ms. Benson filed.  Officer Coleman testified that only a Lieutenant would see grievances.[40]  Plaintiff has provided no evidence or argument to the contrary.

Jail officials have a constitutional duty to take reasonable measures to stop an attack of which they are actually aware.[41]  Here, Plaintiff alleges Defendants should have been aware that an attack could occur.  A constitutional claim cannot be premised on negligence or even gross negligence.[42]  Instead, to rise to the level of deliberate indifference, there must be facts suggesting Defendants actually were aware Plaintiff faced imminent attack or was actually being attacked, but did nothing to try to stop it.[43]

Here, only Officer Coleman (the officer who directed Plaintiff to clean the cell) was near the cell when the attack occurred.[44],[45]  The record does not indicate that Plaintiff resisted or indicated any apprehension with entering Ms. Benson's cell.  Plaintiff testified that Ms. Benson and her cellmates seemed unusually eager for her to enter and clean their cell, but Plaintiff did not tell this to Officer Coleman or any other officer.[46]  Clearly, Plaintiff saw Ms. Benson in the

---

[40]Doc. No. 50-3, p. 2.

[41]*Walton v. Dawson*, 752 F.3d 1109, 1123 (8th Cir. 2014).

[42]*Patterson*, 902 F.3d at 852; *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003).

[43]*See Schoelch*, 625 F.3d at 1046 (prison officials must have actual knowledge to be deliberately indifferent); *Tucker v. Evans*, 276 F.3d 999, 1002 (8th Cir. 2002) (guard's failure "to properly supervise the barracks" was not enough to establish deliberate indifference); *Williams v. Mueller*, 13 F.3d 1214, 1216 (8th Cir. 1994) ("A prison official acts with deliberate indifference to an inmate's safety when the official is present at the time of an assault and fails to intervene or otherwise act to end the assault").

[44]Doc. No. 50-3.

[45]*Id.*

[46]Doc. No. 50-2, pp. 24-25.

cell.  In fact, Plaintiff was herself  "surprised" at Ms. Benson's actions.[47]  Officer Coleman immediately responded to the attack and separated the inmates.

Officer Wright made an "all call" and Defendants Spivey, Moore, Wright, Adkins, and Travis responded from other areas of the jail.[48]  Defendant Munyan, the on-call nurse, was not at the jail.[49]  Plaintiff has not alleged nor provided evidence that any of these Defendants had knowledge of a threat to Plaintiff.

Because  Defendants Coleman, Spivey, Moore, Wright, Adkins, Travis, and Munyan had no knowledge of and did not subjectively disregard any substantial risk to Plaintiff's safety, the claims against them must be dismissed.

### c.     Nikita Brown

Ms. Brown admits she knew before the attack that Plaintiff gave the note  to Corporal Holmes instead of the passing it to a third inmate.[50]  Officer Brown denies that she knew that Ms. Benson knew that Plaintiff failed to pass the note.[51]  She contends that she had no actual knowledge that there was any risk to the Plaintiff's safety regarding the note incident.[52]

Plaintiff contends that Officer Brown had actual knowledge of a substantial risk to her safety, and relies on testimony from Stacy Wright, who was in the cell during the attack and allegedly participated in the attack.[53]  Ms. Wright testified that Officer Brown and Corporal

---

[47]Doc. No. 42-1, p. 27.

[48]Doc. No. 50-10, p. 1.

[49]Doc. No. 50-6, pp. 11-12.

[50]*Id.*

[51]*Id.*

[52]*Id.*

[53]Doc. No. 42-1, p. 25.

Holmes (not a defendant in this case) confronted Ms. Benson about the failed note delivery and laughed about her getting caught, which is why Ms. Benson attacked Plaintiff.[54]  Furthermore, Ms. Wright testified that Ms. Benson was known as a violent person before the attack.

Even though these facts demonstrate Officer Brown's probable negligence, they do not rise to level of a deliberate indifference.[55]  Nothing in the record indicates that Officer Brown knew that Plaintiff would have contact with Ms. Benson.  Furthermore, Ms. Wright's testimony does not support  a finding that Officer Brown knew that an attack on Plaintiff was imminent or even likely.

Because Plaintiff has failed to establish that Officer Brown was deliberately indifferent to a substanial risk of harm to her, the claims against Officer Brown must be dismissed..

## 2.      Denial of Adequate Medical Care Claim

Plaintiff argues that Defendants were deliberately indifferent to her serious medical needs when they refused her treatment request after the assault.  Defendants argue that Plaintiff was provided adequate medical care and suffered only a minor delay in the treatment she received that did not result in any added injury.[56]

The Supreme Court has held that officials violate a prisoner's right to medical care under the Eighth Amendment only if their conduct amounts to "deliberate indifference to [the prisoner's] serious medical needs."[57]  As a pretrial detainee, Plaintiff is "entitled to at least as

---

[54]Doc. No. 50-1.

[55]*See Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019) (noting that a prisoner must show more than negligence and even gross negligence to make out a constitutional violation).

[56]Doc. No. 40.

[57]*Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

much protection under the Fourteenth Amendment as under the Eighth Amendment."[58]  To prove

this claim , Plaintiff must show that: (1) she suffered from an objectively serious medical need,

and (2) Defendants knew of the need and deliberately disregarded it.[59]

The deliberate indifference analysis is a "fact-intensive inquiry" that requires Plaintiff to

"clear a substantial evidentiary threshold" to succeed on her claim.[60]  Deliberate indifference

may include intentionally denying or delaying access to medical care.[61]  The objective

seriousness of delay in treatment must be measured by reference to the effect of delay, which

must be shown by verifying medical evidence in the record.[62]       .

### a.    Deliberate Indifference

### i.    Leslie Moore

Leslie Moore was alerted to the Plaintiff's medical complaint on Saturday, July 11, 2016,

even though she was not at the jail or "on call."  The "on call" nurse, Karen Grant, asked Ms.

Moore if she could go in to check on Plaintiff , which Ms. Moore did.

Ms. Moore testified that when she examined Plaintiff, she discovered bruising on the

forehead, discoloration around the eyes, and a possible fractured nose.  Plaintiff also had

complaints of chest pain.[63]  Accordingly, because of the chest pain, Ms. Moore arranged for

Plaintiff to go to the hospital to be examined further.[64]  Ms. Moore contends she was more

---

[58]*Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004).

[59]*Johnson v. Leonard*, 929 F.3d 56, 575 (8th Cir. 2019).

[60]*Nelson v. Shuffman*, 603 F.3d 439, 448-49 (8th Cir. 2010).

[61]*Peitrafeso v. Lawrence Cnty., S.D.,* 452 F.3d 978, 983 (8th Cir.2006).

[62]*Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005).

[63]*Id.*

[64]*Id.*

concerned with the chest pain than the facial injury.  Upon Plaintiff's return to the jail, Ms.
Moore reviewed her hospital discharge paperwork and provided Plaintiff with the prescribed
pain medication.[65]

Plaintiff contends that Ms. Moore knew about the incident from the outset and failed to
address her medical requests made to staff.  Nothing the record indicates that Ms. Moore knew
about the incident until notified on June 11, 2016, which is when Plaintiff filed an official
medical request.[66]  No jail employee testified that Ms. Moore was notified before the June 11,
2016 phone call.  Based on the record, Ms. Moore responded to the request as soon as she was
notified about it.  Accordingly, Plaintiff has not established deliberate indifference.

### ii.      Monte Munyan

Monte Munyan was the "on call" nurse on the night of the assault.  Mr. Munyan received
a call from Officer Wright about the assault on Plaintiff.[67]  During the phone call, Mr. Munyan
was advised about the assault.  He was given Plaintiff's vital signs and told that she had COPD
and a heart condition that sometimes required nitroglycerine.[68]  Mr. Munyan testified that he did
not deem the Plaintiff's condition to be emergency based on the facts reported to him.  However,
he directed jail staff to place Plaintiff on a four hour medical watch, to give her ice packs every
20 minutes, and to give her a nitroglycerine tablet, as needed.[69]

---

[65]*Id.*

[66]Doc. No 50-20.

[67]Doc. No. 50-6, p. 16.

[68]Doc. 50-10, p. 1.

[69]Doc. No. 50-6, p. 16.

Mr. Munyan testified inmates are placed on Med Watch when a non-emergency medical problem is reported.[70]  Med Watch is a  procedure whereby the staff places the inmate in question in an easily observable location and checks on her more frequently.[71]  If the inmate's condition worsens or additional problems arise during the medical watch, the "on call" nurse is called back; otherwise, the watch ends after a period of time set by the on-call nurse.[72]  Mr. Munyan was not called back by the staff on the evening of the assault , and never called back to check on Plaintiff's status.

Plaintiff contends that Mr. Munyan showed deliberate indifference to Plaintiff's condition.[73]  She points to the fact that Mr. Munyan did not come to the jail and personally examine Plaintiff or call back and check on Plaintiff after he provided the initial Med Watch orders.[74]  Plaintiff also points to an official employee warning given to Mr. Munyan related to Plaintiff's incident.[75]  The warning letter reprimanded Mr. Munyan for not responding to the incident and failing to notify the on-coming nurse of the incident.  The warning letter identified Plaintiff as a trauma victim with a history of heart problems and chest pain.[76]

From his conversations with Officer Wright, Mr. Munyan had direct knowledge of Plaintiff's medical condition.  Mr. Munyan assessed the situation and determined the prudent course of action under the circumstances.  While his response may have been inadequate, or even

---

[70]*Id.* at 17.

[71]*Id.*

[72]*Id.*

[73]Doc. No. 50.

[74]Doc. No. 50-6.

[75]Doc. No. 50-4.

[76]*Id.*

negligent, it fails to meet the deliberate indifference standard.   Even if the better medical

practice would have been to hasten Plaintiff's examination by a doctor or provide more effective

pain relief, Plaintiff has provided no evidence that the delay from the immediate aftermath of the

attack to her examination by a physician two days later is  anything other negligence.

Accordingly, Plaintiff has failed to establish that Mr. Munyan's actions were deliberately

indifferent.

### iii.    Anita Wright

Officer Anita Wright called the "on call" nurse and relayed her observations of the

Plaintiff's condition after Ms. Benson's attack.  She conveyed to Nurse Munyan that Plaintiff's

mouth and nose were bleeding, she was complaining of chest pains, she had  COPD and a heart

condition, and wanted to  see a doctor.[77]  Nurse Munyan provide Officer Wright with Med

Watch orders and instructed her to call him back if Plaintiff's condition worsened.

Plaintiff contends that she endured continuous pain that was exacerbated by the lack of

medical attention following the attack.  She alleges that Officer Wright ignored her condition

and failed to communicate her symptoms to Nurse Munyan.[78]  At the beginning of the Med

Watch, Plaintiff informed Officer Wright that she couldn't sit up and clutched her chest.[79]  In

response, Officer Wright provided Plaintiff with a mat and allowed her to lay down instead of

the normal practice of siting upright and handcuffed to a bench.[80]  After 45 minutes of lying on

---

[77]Doc. No. 50-3, p. 33.

[78]Doc. No. 50.

[79]Doc. No. 50-10.

[80]Doc. No. 50-11, p. 32.

the mat, Plaintiff got up, went inside H-39 cell, and used the phone for the next 45 minutes.[81]

Plaintiff was released from Med Watch after the four hour period lapsed and returned to her

bunk.[82]

Plaintiff's actions during the Med Watch period contradict her assertions that her

condition worsened.  Accordingly, Plaintiff failed to establish that Officer Wright exhibited

deliberate indifference.

### iv.    Edward Travis, Bobbie Spivey, Teresa Coleman and Kerra Adkins

Defendants Travis, Spivey, and Adkins responded to the "all call" issued by Officer

Wright after the Plaintiff's attack. Officer Coleman was present immediately after the attack

occurred and stopped the attack.[83]  Officers Travis and Spivey returned to their normal job

assignments soon after responding.[84]   Officer Adkins stayed to take Plaintiff's blood pressure

and checked to ensure Plaintiff was responsive.[85]

Plaintiff contends that because these Defendants witnessed her physical condition after

the attack, and did not directly respond to her requests for medical attention, they showed

deliberate indifference.[86]  However, it is undisputed that Officer Wright initiated the jail's

medical response policy after the incident, called the "on call" nurse, and provided the care

---

[81]Doc. No. 50-19.

[82]*Id.*

[83]Doc. No. 50-3.

[84]Doc. No. 50-3.

[85]Doc. No. 50-7.

[86]Doc. No. 50.

ordered by the nurse.[87]  This fact belies Plaintiff's claim of deliberate indifference against these

Defendants who responded to the incident and were then released to their normal duties.

    Accordingly, Plaintiff has failed to establish that Defendants Travis, Spivey, Adkins, and

Coleman's actions were deliberately indifferent.

    **B.    Official Capacity and County Liability**

    Official-capacity claims against the Defendants are "functionally equivalent to a suit

against the employing governmental entity."[88]  Accordingly, Plaintiff's official-capacity claims

are treated as claims against Faulkner County.[89]  To sustain these claims, Plaintiff must prove

that the Faulkner County itself caused the constitutional violation.[90]

    Here, no official-capacity claims may be maintained against Faulkner County based on

either claim because Plaintiff has failed to establish a genuine dispute of material fact concerning

the deprivation of her constitutional rights.

    As a result, Defendants are entitled to summary judgment on Plaintiff's failure to protect

claims against Faulkner County and all named Defendants in their official capacities.

**CONCLUSION**

    For the reasons stated above, Defendants' Motion for Summary Judgment (Doc. No. 40)

be, and is hereby, GRANTED.  Plaintiffs' claims are DISMISSED WITH PREJUDICE.

    IT IS SO ORDERED this 24th day of August, 2020.

                        Billy Roy Wilson                     
                        UNITED STATES DISTRICT JUDGE

---

[87]Doc. No. 49, ¶¶14-16.

[88]*Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010).

[89]*See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

[90]*Marsh v. Phelps County*, 902 F.3d 745, 751 (8th Cir. 2018).